FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 1 4 2026

KEVIN P WEIMER, Clerk
By: _____ Deputy Clerk

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DIVINE CREATION OF RASPBERRY PRIVATE TRUST,**

by and through its Fiduciary,

**ELLIS MESHACH RASPBERRY™,**

Plaintiff, Pro Se

(In Propria Persona and Fiduciary Capacity)

All Rights Reserved | UCC 1-308 | Without Prejudice

v.

**--- FULTON COUNTY DEFENDANTS ---**

FULTON COUNTY, GEORGIA;

FULTON COUNTY POLICE DEPARTMENT;

JUDGE ALEXANDRA MANNING, individually;

**--- COBB COUNTY DEFENDANTS ---**

COBB COUNTY, GEORGIA;

COBB COUNTY SHERIFF'S OFFICE;

COBB COUNTY POLICE DEPARTMENT;

JUDGE ANGELA Z. BROWN, individually;

JUDGE BRENDAN F. MURPHY, individually;

JUDGE G. GRANT BRANTLEY, individually;

JUDGE JULIE JACOB ADAMS, individually;

JUDGE RITA CHERRY, individually;

SENIOR JUDGE S. LARK INGRAM, individually;

BRETT E. CONWAY;

CHRISTOPHER HANSARD, Lead Administrator, Cobb County Child Support Services, individually and in official capacity;

DOUGLAS A. HILL;

KEVIN ROGERS, individually and in official capacity;

PHILIP KIMBRELL, individually and in official capacity;

MARSHEL RILEY, Manager, Cobb County Child Support Services, official capacity;

CONNIE TAYLOR, Clerk of Superior Court of Cobb County, individually and official capacity;

ALANNA BRYANT, Deputy Clerk, individually and official capacity;

ASHLEY CORNEJO, Deputy Clerk, individually and official capacity;

### --- OFFICER DEFENDANTS ---

OFFICER AARON FORTNER, individually and in official capacity;

OFFICER D. COSTA, individually and in official capacity;

JOHN DOE LIEUTENANT (Supervisor of Fortner), individually and in official capacity;

### --- STATE AGENCY DEFENDANTS ---

STATE OF GEORGIA, by and through its agencies and officers;

GEORGIA DEPARTMENT OF HUMAN SERVICES;

CANDICE BROCE, Commissioner, Georgia Department of Human Services, official capacity;

SARAH HURST, Assistant Deputy Commissioner, Division of Child Support Services, official capacity;

### --- PRIVATE DEFENDANTS ---

ANDRELL HALL, individually;

THE GEORGIA GAZETTE (thegeorgiagazette.com);

and JOHN DOES 1–20,

Defendants.

**Civil Action No.: 1:26-cv-01546**

---

**SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES**

**42 U.S.C. § 1983 | First, Fourth, Sixth, and Fourteenth Amendments**

**Supplemental State Law Claims | 28 U.S.C. § 1367**

KEVIN ROGERS, individually and in official capacity;

PHILIP KIMBRELL, individually and in official capacity;

MARSHEL RILEY, Manager, Cobb County Child Support Services, official capacity;

CONNIE TAYLOR, Clerk of Superior Court of Cobb County, individually and official capacity;

ALANNA BRYANT, Deputy Clerk, individually and official capacity;

ASHLEY CORNEJO, Deputy Clerk, individually and official capacity;

### --- OFFICER DEFENDANTS ---

OFFICER AARON FORTNER, individually and in official capacity;

OFFICER D. COSTA, individually and in official capacity;

JOHN DOE LIEUTENANT (Supervisor of Fortner), individually and in official capacity;

### --- STATE AGENCY DEFENDANTS ---

STATE OF GEORGIA, by and through its agencies and officers;

GEORGIA DEPARTMENT OF HUMAN SERVICES;

CANDICE BROCE, Commissioner, Georgia Department of Human Services, official capacity;

SARAH HURST, Assistant Deputy Commissioner, Division of Child Support Services, official capacity;

### --- PRIVATE DEFENDANTS ---

ANDRELL HALL, individually;

THE GEORGIA GAZETTE (thegeorgiagazette.com);

and JOHN DOES 1–20,

Defendants.

**Civil Action No.: 1:26-cv-01546**

---

**SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF,
INJUNCTIVE RELIEF, AND DAMAGES**

**42 U.S.C. § 1983 | First, Fourth, Sixth, and Fourteenth Amendments**

**Supplemental State Law Claims | 28 U.S.C. § 1367**

**JURY TRIAL DEMANDED**

## I. INTRODUCTION

1.  This is a comprehensive civil rights action brought by Ellis Meshach Raspberry™, in propria persona and in his fiduciary capacity as Trustee of the Divine Creation of Raspberry Private Trust, a Foreign Grantor Trust (hereinafter 'Plaintiff'), against a constellation of state actors, judicial officers, municipalities, state agencies, appointed counsel, private individuals, and media entities whose coordinated and individual conduct has systematically deprived Plaintiff of rights secured by the United States Constitution over a period spanning from December 2021 to the present day — May 2026.

2.  The violations alleged herein are not isolated incidents. They constitute a documented, escalating, and continuing pattern of: unlawful warrantless home arrest; database-only arrest without probable cause; pretrial detention exceeding ninety days without timely bond hearing; judicial contempt issued without due process; retaliatory bond revocation by a judge who is now a named defendant in this action; predetermined case disposition by colluding appointed public defenders; sustained denial of access to courts through the refusal to rule on over fifty pleadings filed by Plaintiff; ex parte child support proceedings from which Plaintiff was structurally excluded; ex parte protective order proceedings containing perjurious misrepresentations; retaliatory judicial action by named federal defendants continuing to issue orders against Plaintiff after being sued; defamation by private and media defendants; the deliberate creation of a judicial impossibility through conflicting court orders; and cross-jurisdictional forum shopping by Petitioner Andrell Hall using the state court system as an instrument of harassment against a federal litigant.

3.  At the root of every constitutional violation alleged herein is a single unlawful act: the Georgia Department of Human Services, through its Division of Child Support Services under the policy direction of Defendants Candice Broce and Sarah Hurst, initiated and concluded child support enforcement proceedings against Plaintiff without constitutionally adequate notice or opportunity to be heard. The resulting October 24, 2024 ex parte child support order became the engine for every downstream deprivation — the arrests, the detentions, the contempt proceedings, the retaliatory orders, and the weaponization of those proceedings against Plaintiff throughout the years covered by this complaint.

4.  Plaintiff does not seek appellate review of state court judgments. Plaintiff challenges the independent constitutional violations committed in the course of state proceedings — violations that stand on their own as federal civil rights claims regardless of the outcome of any state court proceeding. See Heck v. Humphrey, 512 U.S. 477 (1994); Rooker-Feldman doctrine distinguished per Exxon Mobil Corp. v. Saudi Basic Industries, 544 U.S. 280 (2005).

5. Most critically, the retaliatory acts documented herein are not historical. They are ongoing. On May 5, 2026 — while this federal civil rights action was pending — Defendant Judge Brendan F. Murphy, a named defendant, signed a court order against Plaintiff without disclosing his conflict of interest and without recusing himself. This Court is being asked to recognize an active, documented, continuing pattern of retaliation against a pro se federal litigant by the very judicial officers, law enforcement agencies, and county government he has sued. That pattern is the clearest possible evidence that the constitutional violations Plaintiff alleges are real, systemic, and ongoing.

## II. JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights). This action arises under 42 U.S.C. § 1983; the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution; and the supplemental state law claims are properly before this Court under 28 U.S.C. § 1367.

7. Venue is proper in the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1391(b)(1) and (2), as the majority of Defendants reside within this district and the substantial majority of the events giving rise to Plaintiff's claims occurred in Cobb County and Fulton County, Georgia, both within this division.

8. This Court has jurisdiction to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202 and injunctive relief under Fed. R. Civ. P. 65.

9. Plaintiff's claims are not barred by the Rooker-Feldman doctrine because Plaintiff does not seek review of any state court judgment — Plaintiff challenges the independent constitutional violations committed in the course of state proceedings. See Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005); Alvarez v. Attorney General of Florida, 679 F.3d 1257 (11th Cir. 2012). Plaintiff's claims are similarly not barred by Younger abstention because the state proceedings at issue were infected with bad faith, harassment, and constitutionally deficient process from their inception. See Younger v. Harris, 401 U.S. 37 (1971); Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982).

## III. PARTIES

### A. Plaintiff

10. Plaintiff Ellis Meshach Raspberry™ is a natural person, a living man, appearing in propria persona and in his fiduciary capacity as Trustee of the Divine Creation of Raspberry Private Trust, a Foreign Grantor Trust. Plaintiff resides at 5042 Paces Station Drive, Atlanta, Georgia

30339, Cobb County, Georgia. Plaintiff is the biological father of minor children Arieon Raspberry (born September 11, 2020) and Ariella Raspberry (born September 11, 2020).

## B. Fulton County Defendants

11. Defendant Fulton County, Georgia is a municipal corporation organized under Georgia law, liable under Monell v. Department of Social Services, 436 U.S. 658 (1978) for the unconstitutional policies, customs, and practices of its agents and employees. Fulton County may be served through its County Attorney, 141 Pryor Street SW, Atlanta, GA 30303.

12. Defendant Fulton County Police Department is a law enforcement agency of Fulton County, Georgia, responsible for the training, supervision, and conduct of its officers. At all relevant times, officers acted under color of state law.

13. Defendant Judge Alexandra Manning is a judicial officer of the Fulton County Superior Court, sued in her individual capacity for acts taken outside the scope of lawful judicial authority, including: refusing to review Plaintiff's evidence at the December 28, 2021 hearing; holding Plaintiff in contempt without meaningful opportunity to be heard; and initiating recording mid-hearing to create a selective record. Judge Manning may be served at the Fulton County Superior Court, 136 Pryor Street SW, Atlanta, GA 30303.

## C. Cobb County Defendants

14. Defendant Cobb County, Georgia is a municipal corporation organized under Georgia law, liable under Monell for the unconstitutional policies, customs, and practices of its judicial officers, law enforcement agencies, public defender's office, clerk of court, and child support enforcement apparatus. Cobb County may be served through its County Attorney, 100 Cherokee Street, Marietta, GA 30090.

15. Defendant Cobb County Sheriff's Office is a law enforcement entity of Cobb County whose deputies served process upon Plaintiff in Case No. 26CV03033 while the Sheriff's Office was a named defendant in this federal civil rights action, constituting service of process as an act of retaliation under color of state law. The Sheriff's Office may be served at 32 Waddell Street, Marietta, GA 30090.

16. Defendant Cobb County Police Department is a law enforcement agency of Cobb County responsible for the supervision and conduct of Officers Fortner and Costa and the John Doe Lieutenant. May be served at 140 North Marietta Pkwy, Marietta, GA 30060.

17. Defendant Judge Angela Z. Brown is a judicial officer of the Cobb County Superior Court, sued in her individual capacity for: presiding over Case No. 20106519 and refusing to rule on over fifty pleadings and jurisdictional challenges filed by Plaintiff over a period exceeding five months, without scheduling a single hearing or issuing a single ruling, constituting a sustained, deliberate denial of access to courts. Judge Brown is already a named defendant in

the pending federal civil rights action. She may be served at Cobb County Superior Court, 70 Haynes Street, Marietta, GA 30090.

18. Defendant Judge Brendan F. Murphy is a judicial officer of the Cobb County Superior Court, sued in his individual capacity for: (a) revoking Plaintiff's bond in February 2024 in direct response to Plaintiff's constitutional challenge, causing unlawful detention from February through June 13, 2024; and (b) on May 5, 2026, signing a Continuance of Ex Parte Protective Order in Case No. 26CV03033 against Plaintiff while simultaneously serving as a named defendant in this federal civil rights action, without disclosing the conflict and without recusing himself, constituting judicial retaliation outside the scope of legitimate judicial authority and outside the protection of absolute judicial immunity. See Mireles v. Waco, 502 U.S. 9 (1991); Pulliam v. Allen, 466 U.S. 522 (1984). Judge Murphy may be served at Cobb County Superior Court, 70 Haynes Street, Marietta, GA 30090.

19. Defendant Judge G. Grant Brantley is a judicial officer of the Cobb County Superior Court, sued in his individual capacity for entering a final child support order on October 24, 2024 in ex parte proceedings from which Plaintiff was excluded, without lawful notice, summons, or opportunity to be heard, in violation of the Due Process Clause. He may be served at Cobb County Superior Court, 70 Haynes Street, Marietta, GA 30090.

20. Defendant Judge Julie Jacob Adams is a judicial officer of the Cobb County Superior Court, sued in her individual capacity for: (a) cutting Plaintiff off mid-argument at arraignment when Plaintiff invoked his constitutional right under Article III, Section 1 to challenge the court's authority, in violation of Plaintiff's First and Sixth Amendment rights; and (b) participating with Defendant Kevin Rogers in a predetermined case disposition. She may be served at Cobb County Superior Court, 70 Haynes Street, Marietta, GA 30090.

21. Defendant Judge Rita Cherry is a judicial officer sued in her individual capacity for issuing the warrant authorizing Plaintiff's April 20, 2022 arrest without a constitutionally adequate independent probable cause determination, where the underlying legal challenge to the restraining order was already on file. She may be served through the court of her assignment.

22. Defendant Senior Judge S. Lark Ingram is a judicial officer of the Cobb County Superior Court, sued in her individual capacity for presiding over Case No. 26CV03033 after being placed on formal notice of: the active federal civil rights litigation; the disqualifying conflict of interest created by Judge Murphy's continued involvement; the pending jurisdictional challenges; the judicial impossibility created by conflicting order provisions; and the perjurious misrepresentations in the petition — and proceeding without resolving any of these threshold constitutional issues. She may be served at Cobb County Superior Court, 70 Haynes Street, Marietta, GA 30090.

23. Defendant Connie Taylor is the Clerk of Superior Court of Cobb County, Georgia, sued individually and in official capacity for her role in administering proceedings that denied Plaintiff access to courts and for processing ex parte orders against Plaintiff while systematically failing to ensure Plaintiff's filings received judicial attention. She may be served at 70 Haynes Street, Marietta, GA 30090.

24. Defendant Alanna Bryant is a Deputy Clerk of the Cobb County Superior Court, sued individually and in official capacity for her ministerial participation in filing the April 13,

2026 ex parte protective order obtained through perjurious misrepresentations. She may be served at 70 Haynes Street, Marietta, GA 30090.

25. Defendant Ashley Cornejo is a Deputy Clerk of the Cobb County Superior Court, sued individually and in official capacity for her ministerial participation in filing the May 5, 2026 continuance order executed by the conflicted Defendant Murphy. She may be served at 70 Haynes Street, Marietta, GA 30090.

26. Defendant Kevin Rogers was Plaintiff's appointed public defender in the aggravated stalking proceedings. Rogers is sued in his individual capacity for providing constitutionally deficient representation, colluding with Defendant Judge Julie Jacob Adams in a predetermined case disposition, and participating in proceedings designed to secure a conviction rather than provide zealous adversarial representation, in violation of the Sixth Amendment. See Strickland v. Washington, 466 U.S. 668 (1984); Polk County v. Dodson, 454 U.S. 312 (1981).

27. Defendant Philip Kimbrell was Plaintiff's first appointed public defender, present at arraignment and at the initial 2022 detention proceedings. Kimbrell is sued in his individual capacity for: (a) appearing minutes before Plaintiff's first court appearance without adequate preparation; (b) failing to recognize, support, or assert Plaintiff's constitutional challenge under Article III, Section 1 when raised at arraignment, responding that he did not know what delegation of authority was; and (c) participating in proceedings that resulted in Plaintiff's extended detention without meaningful assistance of counsel. See Strickland v. Washington, 466 U.S. 668 (1984); United States v. Cronic, 466 U.S. 648 (1984).

28. Defendant Brett E. Conway is a senior judge who signed the Certificate of Service for the final child support order entered on October 24, 2024 by Judge G. Grant Brantley. That Certificate of Service did not include Plaintiff's name, address, or any indication that Plaintiff had been served or notified of the proceedings. Conway is sued in his individual capacity for signing a certificate of service that he knew or should have known was constitutionally deficient — certifying service of a final judicial order in proceedings from which the opposing party was entirely absent, without ensuring that the obligor received constitutionally adequate notice. A judge who signs a certificate of service attesting to service that was not provided to the opposing party participates directly in the due process violation. Conway's signature on that certificate is not a ministerial act — it is an affirmative judicial certification of a constitutional deprivation. He may be served through the Cobb County Superior Court, 70 Haynes Street, Marietta, GA 30090.

29. Defendant Christopher Hansard is the Lead Administrator of the Cobb County Child Support Services office, the local administrative unit of the Georgia Department of Human Services Division of Child Support Services responsible for initiating, processing, and administering the child support enforcement proceedings against Plaintiff that culminated in the October 24, 2024 ex parte final child support order. As Lead Administrator, Hansard was the operational supervisor directly responsible for the day-to-day administration of those proceedings, including the assignment of cases, the scheduling of hearings, the issuance of notices to parties, and the oversight of staff responsible for ensuring due process compliance. Hansard is sued in his individual and official capacity for: (a) administering and supervising child support enforcement proceedings against Plaintiff without ensuring Plaintiff received constitutionally adequate notice of any hearing, filing, or proceeding; (b) failing to utilize the

Cobb County Superior Court's on-file email address for Plaintiff when scheduling and conducting multiple hearings in proceedings directly adverse to Plaintiff's financial and parental interests; and (c) implementing and enforcing the GDHS policies and practices that permitted proceedings to be initiated and concluded against Plaintiff without the notice required by the Due Process Clause of the Fourteenth Amendment. As the lead administrative officer of the local child support office, Hansard occupies the critical operational link between the policy directives of Defendants Broce and Hurst at the state level and the specific administrative failures at the local level that deprived Plaintiff of notice and participation. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a supervisor or administrator who implements unconstitutional policies or who fails to correct known constitutional deficiencies is personally liable for the resulting violations. See Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999); Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003). Hansard may be served at Cobb County Child Support Services, 995 Whitlock Ave NW, Marietta, GA 30064.

30. Defendant Douglas A. Hill is an attorney who served as pro bono counsel for Petitioner Andrell Hall beginning in 2024 in the child support enforcement proceedings before the Cobb County Superior Court. Hill was present and actively participating as Hall's counsel of record at every ex parte hearing conducted in those proceedings from 2024 through the entry of the final child support order on October 24, 2024 by Judge G. Grant Brantley. Hill's representation of Hall in those proceedings was the direct and proximate cause of the ex parte nature of those hearings — because Hall had counsel actively advancing her interests in each proceeding, the hearings moved forward, orders were sought and obtained, and the process was completed, all while Plaintiff received no notice of any hearing, no copies of any filings, and no opportunity to retain counsel or appear to contest any aspect of the proceedings. Hill appeared in court, filed documents, argued positions, and obtained orders against Plaintiff across multiple hearings in 2024 — all while Plaintiff was entirely absent and unrepresented, not by his own choice, but because neither Hill as an officer of the court, nor Judge Brantley, nor Defendant Brett Conway as the senior judge who signed the defective Certificate of Service, nor the GDHS administrators who supervised the proceedings, took any step to notify Plaintiff despite the court having Plaintiff's email address on file from prior proceedings before Judge Angela Z. Brown. Hill is sued in his individual capacity as a private actor who conspired with state actors — including Judge Brantley, Brett Conway, Christopher Hansard, and Marshel Riley — to conduct adversarial proceedings and obtain a binding final financial and custodial order against Plaintiff without Plaintiff's constitutionally required notice or participation, across multiple hearings spanning the entirety of 2024. A private attorney who conspires with judges and state officials to deprive a party of constitutional rights is subject to full liability under 42 U.S.C. § 1983. See Dennis v. Sparks, 449 U.S. 24 (1980); Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982); Tower v. Glover, 467 U.S. 914 (1984). Hill may be served through the State Bar of Georgia or his last known address of record with the Cobb County Superior Court.

31. Defendant Marshel Riley is the Manager of Cobb County Child Support Services, sued in official capacity for locally implementing the GDHS policies and practices that resulted in ex parte child support proceedings against Plaintiff without constitutionally adequate notice or opportunity to be heard. She may be served at Cobb County DCSS, 995 Whitlock Ave NW, Marietta, GA 30064.

## D. Officer Defendants

32. Defendant Officer Aaron Fortner (White) is a law enforcement officer of the Cobb County Police Department, sued individually and in official capacity for participating in the April 20, 2022 arrest of Plaintiff based solely on GCIC database status, after reading Plaintiff's filed affidavit challenging the restraining order and proceeding with arrest anyway on instruction from his supervisor. He may be served at Cobb County Police Department, 140 North Marietta Pkwy, Marietta, GA 30060.

33. Defendant Officer D. Costa is a law enforcement officer of the Cobb County Police Department, sued individually and in official capacity for his participation in the April 20, 2022 arrest under the same constitutionally deficient basis. He may be served at Cobb County Police Department, 140 North Marietta Pkwy, Marietta, GA 30060.

34. Defendant John Doe Lieutenant is the supervising officer who instructed Officer Fortner to arrest Plaintiff based solely on GCIC database status, without independent probable cause determination. This defendant will be identified through initial disclosures and discovery.

## E. State Agency Defendants — Georgia Department of Human Services

35. Defendant State of Georgia is named as a defendant in its capacity as the governmental entity responsible for the administration and oversight of the Georgia Department of Human Services and its Division of Child Support Services, through which the State of Georgia receives and administers federal Title IV-D funds under 42 U.S.C. § 651 et seq. The State of Georgia is not sued for money damages — which are barred by the Eleventh Amendment absent consent — but is sued for declaratory and injunctive relief pursuant to Ex parte Young, 209 U.S. 123 (1908), to remedy the ongoing constitutional violations arising from its administration of the Title IV-D program in a manner that systematically deprives obligors of due process and creates structural financial bias in adjudication. The State of Georgia may be served through the Office of the Attorney General, 40 Capitol Square SW, Atlanta, GA 30334.

36. Defendant Georgia Department of Human Services (hereinafter 'GDHS') is a state agency of the State of Georgia. Through its Division of Child Support Services, GDHS initiated, prosecuted, and concluded child support enforcement proceedings against Plaintiff without providing constitutionally adequate notice or ensuring Plaintiff's meaningful participation, resulting in an October 24, 2024 final child support order entered by Judge Brantley that Plaintiff had no opportunity to contest. GDHS is the institutional root cause from which every downstream constitutional violation in this complaint flows. GDHS may be served at 2 Peachtree Street NW, Atlanta, GA 30303.

37. Defendant Candice Broce is the Commissioner of the Georgia Department of Human Services, sued in her official capacity as the senior policymaker responsible for the policies and practices of GDHS, including the child support enforcement practices that permitted proceedings to be initiated and concluded against Plaintiff without constitutionally required notice and participation. Under Monell, Commissioner Broce's policies and practices as the final policymaker of GDHS are directly attributable to GDHS as an entity. She may be served at 2 Peachtree Street NW, Atlanta, GA 30303.

38. Defendant Sarah Hurst is the Assistant Deputy Commissioner of the Division of Child Support Services within GDHS, sued in her official capacity for administering the specific child support enforcement division whose practices directly caused the ex parte proceedings and order that deprived Plaintiff of his due process rights. She may be served at 2 Peachtree Street NW, Atlanta, GA 30303.

## F. Private and Media Defendants

39. Defendant Andrell Hall is a private individual and the mother of Plaintiff's minor children. Hall is sued for defamation per se, intentional infliction of emotional distress, abuse of process, malicious use of civil process, and civil conspiracy for: (a) publishing false statements of fact about Plaintiff on social media to a large public audience; (b) filing a Petition for Temporary Protective Order in Cobb County Superior Court on April 13, 2026 containing material misrepresentations under oath; and (c) engaging in a pattern of cross-jurisdictional forum shopping, obtaining protective orders in both Fulton County and Cobb County against the same respondent involving the same children and the same co-parenting dispute. Hall may be served at 2167 Cypress Lane SW, Atlanta, GA 30331.

40. Defendant The Georgia Gazette is a media entity operating at thegeorgiagazette.com that publishes criminal booking records. The Georgia Gazette is sued for defamation per se for: (a) publishing and maintaining a booking record for Plaintiff listing 'Aggravated Stalking' as the charge, which was subsequently reduced to misdemeanor stalking, without updating or correcting the publication to reflect the actual disposition; and (b) publishing content associating Plaintiff's name with the headline 'Over 300 Bodies Were Found On His Property' — a false and incendiary association that has no basis in fact. The Georgia Gazette may be served through its registered agent or principal office.

41. Defendants John Does 1 through 20 are individuals and entities whose identities are currently unknown to Plaintiff but who participated in the constitutional violations described herein. Plaintiff will seek to identify these defendants through initial disclosures and discovery and will amend this complaint promptly upon their identification.

## IV. FACTUAL ALLEGATIONS

## A. The Root Cause: Ex Parte Child Support Proceedings and the Constitutional Trap

42. All of the constitutional violations described in this complaint share a single traceable root: the initiation and conclusion of child support enforcement proceedings against Plaintiff by the Georgia Department of Human Services, through its Division of Child Support Services, without providing Plaintiff constitutionally adequate notice or any meaningful opportunity to be heard.

43. Defendants Candice Broce and Sarah Hurst, as senior policymakers of GDHS and its Division of Child Support Services respectively, established, maintained, and failed to correct the policies and practices that permitted these proceedings to be initiated and concluded against Plaintiff without notice. Defendant Marshel Riley implemented those policies locally. The resulting October 24, 2024 child support order, entered by Defendant Judge G. Grant Brantley in ex parte proceedings from which Plaintiff was entirely excluded, became the legal and financial engine driving every subsequent deprivation of Plaintiff's constitutional rights.

44. This order was entered while Plaintiff was subject to a prior restraining order that restricted his contact with and proximity to Andrell Hall — a structural arrangement that made it impossible for Plaintiff to participate in proceedings involving her. The constitutional trap was complete: Plaintiff was restrained from participation by one court order, and that restraint was then exploited to obtain a financial order against him in proceedings he could not attend. A parent has a constitutionally protected liberty and property interest in the outcome of child support proceedings. See Mathews v. Eldridge, 424 U.S. 319 (1976); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950); M.L.B. v. S.L.J., 519 U.S. 102 (1996); Lassiter v. Department of Social Services, 452 U.S. 18 (1981).

## B. December 28, 2021 — Fulton County — No Service, Contempt Without Due Process

45. On December 28, 2021, Plaintiff appeared for a Temporary Protective Order hearing in Fulton County Superior Court before Defendant Judge Alexandra Manning. Plaintiff had never been personally served with the petition. Plaintiff received only regular mail containing petition documents, without a summons and without lawful service of process as required by O.C.G.A. § 9-11-4 and the Due Process Clause of the Fourteenth Amendment.

46. At the hearing, Plaintiff presented evidence and challenged the validity of the proceedings, including a demand for proof of the court's lawful authority — specifically, delegation of authority under Article III, Section 1 and Article VI, Clause 3 of the United States Constitution. Judge Manning refused to review Plaintiff's evidence, relied exclusively on the opposing party's allegations, and stated that the Governor provided her authority.

47. Judge Manning initiated recording mid-hearing and immediately held Plaintiff in contempt, without meaningful opportunity to be heard, without reviewing Plaintiff's evidence, and without making constitutionally adequate findings on the record. This conduct violated Plaintiff's rights under the First, Fifth, and Fourteenth Amendments and deprived Plaintiff of liberty without due process. See Mathews v. Eldridge, 424 U.S. 319 (1976); In re Oliver, 333 U.S. 257 (1948) (contempt requires notice and hearing).

## C. January 2022 — Warrantless Home Arrest — Fulton County Sheriff

48. Approximately four days following the December 28, 2021 hearing, officers of the Fulton County Sheriff's Office arrived at Plaintiff's residence. Officers surrounded the home, shone lights inside, and forced entry after Plaintiff's roommate opened the door. Officers did not present a warrant prior to or upon entry. Officers ordered Plaintiff to the ground and arrested him for contempt. Plaintiff was transported to Fulton County Jail and detained approximately three days.

49. This warrantless home arrest violated the Fourth Amendment's absolute prohibition on arresting a person in his home without a warrant absent exigent circumstances. See Payton v. New York, 445 U.S. 573 (1980); Kyllo v. United States, 533 U.S. 27 (2001); Kirk v. Louisiana, 536 U.S. 635 (2002). No warrant was presented. No exigent circumstances existed. The entry and arrest were constitutionally unlawful on their face.

## D. April 20, 2022 — Database-Only Arrest — Officers Fortner and Costa

50. On April 20, 2022, Plaintiff went to his children's residence. Plaintiff had filed legal documents challenging the restraining order then in effect. Officers Aaron Fortner and D. Costa responded. Officers identified a potential warrant from Alpharetta, but Alpharetta authorities declined to execute it.

51. Officer Fortner then contacted his supervising John Doe Lieutenant, who instructed that Plaintiff be arrested if the restraining order appeared active in the GCIC criminal database. Plaintiff was arrested solely on the basis of GCIC database status. Officer Fortner had read Plaintiff's filed affidavit at the scene — he was on actual notice of Plaintiff's pending legal challenges to the underlying order — and proceeded with the arrest anyway. Arrest based solely on database status, without independent verification of the warrant's validity and without independent probable cause determination, violates the Fourth Amendment. See Herring v. United States, 555 U.S. 135 (2009); Arizona v. Evans, 514 U.S. 1 (1995); Beck v. Ohio, 379 U.S. 89 (1964).

52. The warrant authorizing this arrest was issued by Defendant Judge Rita Cherry without constitutionally adequate independent probable cause determination given the pending legal challenges. Plaintiff was transported and detained for approximately ninety days without a timely bond hearing, in violation of the Fourth Amendment and the Due Process Clause. See County of Riverside v. McLaughlin, 500 U.S. 44 (1991) (probable cause determination required within 48 hours of warrantless arrest).

## E. Ineffective Assistance of Counsel — Philip Kimbrell and Kevin Rogers

53. Defendant Philip Kimbrell was appointed to represent Plaintiff at arraignment and initial detention proceedings in 2022. Kimbrell appeared minutes before the proceeding without adequate preparation. At arraignment before Defendant Judge Julie Jacob Adams, Plaintiff invoked his constitutional right to challenge the court's authority under Article III, Section 1 of the United States Constitution and demanded delegation of authority. When Plaintiff asked Kimbrell about this challenge, Kimbrell stated he did not know what delegation of authority was. When Plaintiff began reading Article III, Section 1 to the court, Judge Adams cut Plaintiff off and refused to allow him to complete his constitutional argument.

54. Kimbrell's failure to recognize, support, or assert a fundamental constitutional challenge raised by his own client constitutes deficient performance under Strickland v. Washington, 466 U.S. 668 (1984) and United States v. Cronic, 466 U.S. 648 (1984). The combined conduct of Kimbrell and Judge Adams in shutting down Plaintiff's constitutional challenge at arraignment violated Plaintiff's First Amendment right to be heard, his Sixth Amendment right to counsel, and his right to present a defense. See Washington v. Texas, 388 U.S. 14 (1967); Crane v. Kentucky, 476 U.S. 683 (1986).

55. Defendant Kevin Rogers was subsequently appointed as Plaintiff's public defender for the aggravated stalking proceedings. Rogers participated in a predetermined case disposition in coordination with Defendant Judge Julie Jacob Adams, resulting in the charge being reduced from aggravated stalking to misdemeanor stalking and Plaintiff being fined and placed on probation, without Plaintiff's informed consent to the specific terms of the disposition and without full consideration of Plaintiff's constitutional defenses. This predetermined disposition circumvented the adversarial process the Sixth Amendment requires and constitutes both ineffective assistance and participation in a civil conspiracy. See Strickland, 466 U.S. at 668; Dennis v. Sparks, 449 U.S. 24 (1980).

**F. January 25, 2024 — Failure to Appear Arrest**

56. On January 25, 2024, Plaintiff was arrested for alleged failure to appear. Plaintiff was held at Fulton County Jail approximately ten days before being transferred to Cobb County Jail.

**G. February 2024 — Retaliatory Bond Revocation by Judge Murphy**

57. In February 2024, Plaintiff appeared before Defendant Judge Brendan F. Murphy. Plaintiff raised constitutional objections to the proceedings and demanded documentation establishing the court's lawful authority. Judge Murphy provided documentation. Plaintiff challenged its sufficiency. In direct response to Plaintiff's assertion of constitutional rights, Judge Murphy revoked Plaintiff's bond and ordered detention without bond. Plaintiff remained incarcerated until June 13, 2024 — approximately four months.

58. Bond revocation issued as a direct response to a litigant's assertion of constitutional rights constitutes punishment for the exercise of First Amendment-protected conduct and a

deprivation of liberty without due process. See United States v. Salerno, 481 U.S. 739 (1987); Stack v. Boyle, 342 U.S. 1 (1951). Judge Murphy's bond revocation was not a neutral judicial act — it was retaliation. See Hartman v. Moore, 547 U.S. 250 (2006); Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274 (1977).

### H. June 13, 2024 — Case Disposition

59. On June 13, 2024, Plaintiff's aggravated stalking charge was reduced to misdemeanor stalking. Plaintiff was fined and placed on probation. These proceedings occurred without full and fair consideration of Plaintiff's constitutional defenses, without meaningful assistance of counsel, and as part of a disposition process Plaintiff contends was predetermined between Defendants Rogers and Adams.

### I. October 24, 2024 — Ex Parte Child Support Order

60. The final child support order entered by Defendant Judge G. Grant Brantley on October 24, 2024 was the product of a series of ex parte proceedings conducted throughout 2024 in which Defendant Douglas A. Hill appeared as pro bono counsel of record for Andrell Hall. Hill was present at every hearing. He filed documents on Hall's behalf. He made arguments before Judge Brantley. He actively advanced Hall's interests across multiple court appearances leading up to the final order. At no point during any of these proceedings — not at the first hearing, not at any intermediate hearing, and not at the final hearing — did Hill, as an officer of the court, take any action to ensure that the opposing party received notice of the proceedings in which he was participating. At no point did Judge Brantley direct that Plaintiff be notified. At no point did Defendant Brett Conway, who signed the Certificate of Service for the final order, ensure that Plaintiff's name appeared on that certificate. At no point did Defendant Christopher Hansard or Defendant Marshel Riley, who administered the proceedings through Cobb County Child Support Services, use the court's on-file email address for Plaintiff to provide any notice of any hearing. Every actor in this proceeding — Hill as counsel, Brantley as judge, Conway as certifying senior judge, Hansard and Riley as administrators — had either a legal obligation or a professional duty to ensure Plaintiff received notice, and every one of them failed to fulfill that obligation across every hearing conducted throughout 2024. This was not a single administrative oversight. It was a sustained, multi-hearing failure to notify Plaintiff that resulted in a final binding financial order entered against him after a process from which he was entirely excluded. The Certificate of Service for the final order, signed by an unidentified person acting 'For' Defendant Brett Conway, did not include Plaintiff's name, address, or any method of service indicating Plaintiff had been notified. This occurred despite the fact that the Cobb County Superior Court had Plaintiff's email address on file from prior active proceedings before Judge Angela Z. Brown — proceedings in which the Court communicated with Plaintiff directly via email. The means to provide constitutionally adequate notice existed, were known to the court and its administrators, were used in other contexts, and were deliberately

not used here. Under Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), notice must be reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action. Under Jones v. Flowers, 547 U.S. 220 (2006), when a government entity has a known alternative means of providing notice and fails to use it, that failure compounds and cannot excuse the due process violation. This child support order, entered without Plaintiff's notice or participation despite the court's possession of Plaintiff's contact information, after multiple hearings at which Plaintiff was unrepresented while Hall was actively represented by Defendant Hill, is void. See Mathews v. Eldridge, 424 U.S. 319 (1976); Mullane, 339 U.S. at 306; M.L.B. v. S.L.J., 519 U.S. 102 (1996).

## J. November 2025 to Present — Sustained Denial of Access to Courts

61. Beginning November 26, 2025, Plaintiff filed in excess of fifty pleadings, motions, jurisdictional challenges, and supporting documents in Case No. 20106519 in the Cobb County Superior Court before Defendant Judge Angela Z. Brown. As of the date of this Second Amended Complaint, not one of those filings has been ruled upon. No hearings have been scheduled. No responses have been required. Plaintiff's filings have been received, filed, and ignored.

62. This systematic refusal to engage with over fifty filed documents over a period exceeding five months constitutes a denial of access to courts in violation of the First and Fourteenth Amendments. See Christopher v. Harbury, 536 U.S. 403 (2002); Lewis v. Casey, 518 U.S. 343 (1996); Bounds v. Smith, 430 U.S. 817 (1977). Among the ignored filings are direct jurisdictional challenges and challenges to the validity of the October 24, 2024 child support order. A court's refusal to rule on pending jurisdictional challenges while continuing to enforce contested orders is itself a constitutional violation of the most fundamental kind.

63. Plaintiff has also filed separate state court actions against Defendant Andrell Hall and Defendant The Georgia Gazette for defamation arising from the conduct described in Sections IV.N and IV.O of this complaint. As of the date of this Second Amended Complaint, those separately filed lawsuits have received no response from the Court, no scheduling of hearings, no rulings, and no acknowledgment of the substantive claims raised therein. The named defendants in those actions have not been required to respond. Plaintiff's pleadings have been filed, received, and ignored in precisely the same manner as the fifty-plus pleadings filed in Case No. 20106519.

64. The simultaneous and coordinated refusal of the Cobb County judicial system to act on three separate tracks of Plaintiff's litigation — (1) the fifty-plus pleadings in Case No. 20106519; (2) the separately filed defamation action against Andrell Hall; and (3) the separately filed defamation action against The Georgia Gazette — is not the product of judicial backlog or administrative delay. It is a documented, systemic pattern of denial of access to courts that spans multiple case numbers, multiple judges, and multiple subject matters, all converging on a single common factor: Plaintiff Ellis Meshach Raspberry™ is the filer. The Cobb County Superior Court, whose presiding judges are named defendants in this federal civil rights action, has effectively closed its doors to Plaintiff across every matter in which he seeks relief. This constitutes a wholesale denial of access to courts in violation of the First and

Fourteenth Amendments and the constitutional guarantee that courts must remain open to all persons seeking redress. See Christopher v. Harbury, 536 U.S. 403 (2002); Lewis v. Casey, 518 U.S. 343 (1996); Tennessee v. Lane, 541 U.S. 509 (2004); Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983).

65. The defamation actions against Hall and The Georgia Gazette are not peripheral matters. They are direct exercises of Plaintiff's First Amendment right to petition the courts for redress of reputational harm caused by false statements of fact about him that remain publicly searchable and continue to cause ongoing injury. The refusal of the Cobb County court system to process these actions denies Plaintiff the only legal remedy available to him for continuing, real-time harm. Every day those defamatory publications remain uncorrected and those lawsuits remain unprocessed is a day Plaintiff suffers irreparable harm for which no adequate remedy at law exists. This ongoing denial supports Plaintiff's request for injunctive relief from this Court directing the Cobb County Superior Court to schedule and adjudicate Plaintiff's pending state court actions without further delay.

## K. April 2026 — Retaliatory TPO, Perjury, and Cross-Jurisdictional Forum Shopping

66. On April 13, 2026, Defendant Andrell Hall filed a Petition for Temporary Protective Order in Cobb County Superior Court, Case No. 26CV03033. An ex parte protective order was issued the same day by Defendant Senior Judge S. Lark Ingram, without notice to Plaintiff.

67. This petition is part of a documented pattern of cross-jurisdictional forum shopping. Hall previously obtained a temporary protective order against Plaintiff in Fulton County Superior Court involving the same parties, the same minor children, and the same co-parenting relationship. Having exhausted the benefit of that prior Fulton County order, Hall relocated to Atlanta and filed the present action in Cobb County — the same court system where Plaintiff has over fifty unanswered filings and where multiple judges are named defendants in this action. This constitutes abuse of process under O.C.G.A. § 51-7-80 et seq. and a deliberate use of the state court apparatus as an instrument of harassment against a federal litigant.

68. The petition contains material misrepresentations under oath constituting perjury under O.C.G.A. § 16-10-71, including: (a) characterizing Plaintiff's December 6, 2025 posting of a public court document — the 2020 Acknowledgment of Service from Case No. 20-1-6879, a Cobb County Superior Court public record — as the threatening disclosure of Hall's residential address, when Hall herself stated in the AppClose co-parenting application on April 1, 2026: 'All court information is public information' — a party admission under O.C.G.A. § 24-8-821 that directly contradicts and destroys this allegation; and (b) characterizing Plaintiff's statement on March 14, 2026 — made in the full context of a lengthy communication about co-parenting dysfunction and Plaintiff's parental commitment — as a physical threat, by stripping and presenting only the final sentence in isolation from its full context.

69. Hall's knowledge of the December 6, 2025 Facebook post, made over four months before the petition was filed, establishes that Hall was conducting ongoing surveillance of Plaintiff's

social media activity and chose to weaponize a post about a public court document as the basis for emergency ex parte relief. A party who actively surveils another person's social media over months and weaponizes public legal speech in ex parte proceedings cannot credibly claim to be in genuine fear of imminent physical harm from that same person.

## L. May 5, 2026 — Judge Murphy's Retaliatory Continuance Order

70.  On May 5, 2026, Defendant Judge Brendan F. Murphy signed a Continuance of Ex Parte Protective Order in Case No. 26CV03033, extending the April 13, 2026 ex parte order through June 2, 2026. At the time Murphy signed this order, he was a named defendant in this federal civil rights action. He did not disclose the conflict. He did not recuse himself. He signed a punitive order against a party who had already named him as a federal defendant.

71.  This act is outside the scope of legitimate judicial authority and outside the protection of absolute judicial immunity. See Mireles v. Waco, 502 U.S. 9 (1991); Stump v. Sparkman, 435 U.S. 349 (1978); Pulliam v. Allen, 466 U.S. 522 (1984). An act of judicial retaliation against a federal litigant, committed by a judge who is himself a named defendant, is not a judicial act entitled to immunity — it is a constitutional tort committed under color of state law, cognizable under 42 U.S.C. § 1983.

## M. The Judicial Impossibility — Conflicting Court Orders Creating Mutually Exclusive Obligations

72.  The ex parte protective order in Case No. 26CV03033 simultaneously: (a) restrains Plaintiff from approaching within 500 yards of Andrell Hall at any location (paragraph 13); and (b) requires both Plaintiff and Hall to appear before the presiding judge in Courtroom M202, Cobb County Courthouse, 32 Waddell Street, Marietta, Georgia on June 2, 2026 (paragraph 4). These two provisions are irreconcilable on their face. The courthouse and Courtroom M202 are well within 500 yards of wherever Hall will be standing in that courtroom.

73.  This judicial impossibility places Plaintiff in an unconstitutional trap with no lawful exit: appear at the hearing and face arrest for violating the 500-yard restraint; comply with the 500-yard restraint and face contempt or default for failing to appear. Either outcome prejudices Plaintiff for conduct the Court's own conflicting orders have made legally unavoidable. The Due Process Clause requires that legal obligations be capable of simultaneous compliance. See Lambert v. California, 355 U.S. 225 (1957); Papachristou v. City of Jacksonville, 405 U.S. 156 (1972); United States v. Harriss, 347 U.S. 612 (1954).

74.  This is not the first time Plaintiff has been subjected to this structural mechanism. A prior restraining order previously restricted Plaintiff's participation in proceedings, and that restriction was then exploited to obtain the October 24, 2024 child support order without Plaintiff's participation. The judicial impossibility in Case No. 26CV03033 follows the identical pattern: create irreconcilable legal obligations, then enforce the consequences of the

trap against the person it was designed to ensnare. This pattern, repeated across multiple proceedings and multiple judicial officers, constitutes coordinated, systemic retaliation against Plaintiff for exercising his constitutional rights.

## N. Defamation by Andrell Hall

75.  On or about October 27, 2024, Defendant Andrell Hall published or caused to be published through an anonymous account a post in the public Facebook group 'Sis, Is This Your Man — [ATLANTA]' containing the following false statements of fact about Plaintiff: that Plaintiff owes $40,000 in child support; that Plaintiff cannot leave the country; that Plaintiff has no driver's license; that Plaintiff is paid under the table; that Plaintiff is 'probably homeless'; and additional sexually degrading characterizations. The post included Plaintiff's photograph published without consent. The post generated at least 68 comments and 14 reactions, establishing actual, wide dissemination to a large public audience.

76.  Hall's authorship of the anonymous post is established by her unique personal knowledge of the details alleged, her consistent pattern of making similar representations in court filings and communications, and the timing of the post relative to the parties' ongoing litigation. These false statements constitute defamation per se under O.C.G.A. § 51-5-4 and were made with actual malice — with knowledge of their falsity or reckless disregard for their truth. See New York Times Co. v. Sullivan, 376 U.S. 254 (1964); Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974); Mathis v. Cannon, 276 Ga. 16 (2002).

## O. Defamation by The Georgia Gazette

77.  Defendant The Georgia Gazette published on or about April 23, 2022 a booking record identifying Plaintiff by full name with his photograph, listing the charge as 'Aggravated Stalking.' That charge was subsequently reduced to misdemeanor stalking on June 13, 2024. The Georgia Gazette has not updated, corrected, or retracted its publication. The continued publication of the aggravated stalking designation without the actual disposition constitutes an ongoing defamatory publication imputing a felony to Plaintiff that he was not convicted of. See O.C.G.A. § 51-5-4; Walker v. Whittle, 83 Ga. App. 445 (1951).

78.  Additionally, The Georgia Gazette published content on or about April 25, 2021 associating Plaintiff's name with the description 'Over 300 Bodies Were Found On His Property.' No such event ever occurred. This false association of Plaintiff's name with the discovery of hundreds of bodies constitutes defamation per se — a statement that on its face exposes Plaintiff to public hatred, contempt, and ridicule and imputes to him conduct constituting the most serious possible criminal offense. See O.C.G.A. § 51-5-4; Atlanta Journal-Constitution v. Jewell, 251 Ga. App. 808 (2001).

## P. Coordinated Retaliation — The Pattern as a Whole

79. The individual acts described above do not exist in isolation. Viewed together, they constitute a coordinated pattern of retaliatory state action against Plaintiff for exercising his constitutional rights — including his right to petition the courts, his right to challenge judicial authority, his right to file a federal civil rights lawsuit, and his right to parent his children. The actors in this pattern include: judges who revoke bonds when constitutional challenges are raised; public defenders who collude in predetermined dispositions; law enforcement who arrest on database status alone while ignoring filed legal challenges; a state agency whose policies exclude obligors from proceedings that establish their financial obligations; a petitioner who obtains successive cross-jurisdictional protective orders using perjured petitions; a conflicted judge who signs retaliatory orders while a named federal defendant; and a clerk's office that processes ex parte orders against Plaintiff while ignoring over fifty of Plaintiff's own filings. The breadth, duration, and coordination of this pattern is itself evidence of a Monell custom and policy, a civil conspiracy under both federal and state law, and systemic retaliation under 42 U.S.C. § 1983.

## V. FEDERAL CLAIMS — 42 U.S.C. § 1983

Plaintiff incorporates by reference all preceding paragraphs. Each count below is brought pursuant to 42 U.S.C. § 1983 against Defendants acting under color of state law, except where otherwise specified. All individual defendants are sued in their individual capacities unless otherwise stated.

## COUNT I
### PROCEDURAL DUE PROCESS — FOURTEENTH AMENDMENT
*Against: All judicial officer defendants, GDHS defendants, Cobb County, Fulton County*

80. Plaintiff had constitutionally protected liberty and property interests in: freedom from unlawful detention; his parental rights and relationship with his minor children; the outcome of child support proceedings; and meaningful access to the courts. Defendants deprived Plaintiff of each of these interests without constitutionally adequate notice or a meaningful opportunity to be heard. The warrantless home arrest, the database-only arrest, the ninety-day detention without timely bond hearing, the contempt without hearing, the bond revocation in response to a constitutional challenge, the ex parte child support order, and the ex parte protective orders each independently constitute procedural due process violations. See Mathews v. Eldridge, 424 U.S. 319 (1976); Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532 (1985); Mullane v. Central Hanover Bank, 339 U.S. 306 (1950); Santosky v. Kramer, 455 U.S. 745 (1982).

## COUNT II

### UNLAWFUL SEIZURE — FOURTH AMENDMENT

*Against: Fulton County, Fulton County Sheriff's Office, Officers Fortner and Costa, John Doe Lieutenant, Judge Cherry*

81. Plaintiff was unconstitutionally seized without a lawful warrant on at least two occasions: (a) the warrantless home arrest in January 2022 in direct violation of Payton v. New York, 445 U.S. 573 (1980), which holds that absent exigent circumstances the Fourth Amendment prohibits the warrantless arrest of a person in his home; and (b) the April 20, 2022 arrest based solely on GCIC database status without independent probable cause determination, in violation of Beck v. Ohio, 379 U.S. 89 (1964) and Herring v. United States, 555 U.S. 135 (2009). Both arrests were constitutionally unlawful regardless of the underlying charge.

## COUNT III

### FALSE IMPRISONMENT — FEDERAL

*Against: Fulton County, Cobb County, all arresting officers, Judge Murphy*

82. Plaintiff was detained without lawful basis across multiple incidents totaling in excess of four months: approximately three days following the warrantless home arrest; approximately ninety days following the April 20, 2022 arrest without timely bond hearing; approximately ten days following the January 25, 2024 arrest; and from February through June 13, 2024 following Judge Murphy's retaliatory bond revocation. Each detention constitutes false imprisonment under color of state law in violation of the Fourth and Fourteenth Amendments. See Baker v. McCollan, 443 U.S. 137 (1979); Manuel v. City of Joliet, 580 U.S. 357 (2017).

## COUNT IV

### DENIAL OF ACCESS TO COURTS — FIRST AND FOURTEENTH AMENDMENTS

*Against: Judge Angela Z. Brown, Cobb County, Connie Taylor, Alanna Bryant, Ashley Cornejo*

83. The right of access to the courts is a fundamental constitutional right protected by the First and Fourteenth Amendments. See Christopher v. Harbury, 536 U.S. 403 (2002); Lewis v. Casey, 518 U.S. 343 (1996); Bounds v. Smith, 430 U.S. 817 (1977); Tennessee v. Lane, 541 U.S. 509 (2004). Defendants have denied Plaintiff meaningful access to the courts across three simultaneous, independently documented, and ongoing tracks of litigation suppression: TRACK ONE: The refusal to rule on over fifty pleadings, motions, and jurisdictional challenges filed in Case No. 20106519 before Judge Angela Z. Brown over a period exceeding five months, without scheduling a single hearing or issuing a single ruling, while

continuing to enforce contested orders against Plaintiff. TRACK TWO: The refusal to process, schedule, or adjudicate Plaintiff's separately filed state court defamation lawsuit against Defendant Andrell Hall. That lawsuit has received no response, no ruling, and no hearing as of the date of this Second Amended Complaint. TRACK THREE: The refusal to process, schedule, or adjudicate Plaintiff's separately filed state court defamation lawsuit against Defendant The Georgia Gazette. That lawsuit has similarly received no response, no ruling, and no hearing. In addition, Defendants cut Plaintiff off during his constitutional challenge at arraignment, processed ex parte orders against Plaintiff through the same clerk's office that systematically ignores Plaintiff's filings, and obstructed Plaintiff's ability to contest orders entered against him without notice or participation. The convergence of these denials across multiple case numbers, multiple judges, and multiple subject matters sharing the single common factor of Plaintiff as the filer is not coincidence or administrative delay. It is targeted, systemic suppression of a federal litigant's access to the very court system in which he is being harmed, perpetrated by a judicial apparatus whose presiding judges are named defendants in the federal civil rights action Plaintiff has brought against them. This constitutes both a backward-looking denial of access claim under Christopher v. Harbury and a forward-looking claim under Lewis v. Casey.

## COUNT V
### MUNICIPAL LIABILITY — MONELL

*Against: Cobb County, Fulton County, Cobb County Sheriff's Office, Cobb County Police Department, Fulton County Police Department, GDHS*

84. Defendants Cobb County, Fulton County, and GDHS are liable under Monell v. Department of Social Services, 436 U.S. 658 (1978) for constitutional violations resulting from: (a) official policies or customs authorizing database-only arrests without independent probable cause verification; (b) deliberate indifference to the due process rights of child support obligors in enforcement proceedings; (c) the sustained custom of refusing to rule on pro se litigants' pleadings in Cobb County Superior Court; (d) inadequate training of officers in the constitutional requirements for warrantless home arrest; and (e) the failure to supervise judicial officers and employees despite knowledge of ongoing constitutional violations. See City of Canton v. Harris, 489 U.S. 378 (1989); Pembaur v. City of Cincinnati, 475 U.S. 469 (1986); Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397 (1997).

## COUNT VI
### CIVIL CONSPIRACY — 42 U.S.C. §§ 1983 AND 1985

*Against: All defendants*

85. Defendants acted jointly and in concert to deprive Plaintiff of rights secured by the Constitution and laws of the United States. The conspiracy is evidenced by: coordinated

pretrial detention without adequate process; predetermined case disposition between appointed counsel and judicial officers; coordinated refusal to rule on Plaintiff's filings across multiple judges; coordinated retaliatory actions by judicial officers and law enforcement following Plaintiff's initiation of federal litigation; the use of child support enforcement as the financial instrument of control throughout — specifically the conduct of Defendant Douglas A. Hill who appeared as pro bono counsel at every ex parte child support hearing in 2024 while Plaintiff received no notice, making Hill an active and essential participant in a conspiracy with state actors including Judge Brantley, Brett Conway, Christopher Hansard, and Marshel Riley to obtain a binding financial order against Plaintiff without his constitutionally required participation; the service of retaliatory process upon Plaintiff by agents of a named federal defendant; and the filing of a perjury-laden protective order through a court system whose judges are named defendants in this action. See Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Dennis v. Sparks, 449 U.S. 24 (1980); Griffin v. Breckenridge, 403 U.S. 88 (1971); Tower v. Glover, 467 U.S. 914 (1984).

## COUNT VII

### SIXTH AMENDMENT — INEFFECTIVE ASSISTANCE OF COUNSEL AND RIGHT TO PRESENT DEFENSE

*Against: Philip Kimbrell, Kevin Rogers, Cobb County*

86. Plaintiff's Sixth Amendment right to effective assistance of counsel was violated by Defendants Kimbrell and Rogers who: appeared without adequate preparation; failed to assert or support Plaintiff's constitutional challenges; participated in predetermined dispositions; and in Kimbrell's case expressly failed to recognize a fundamental constitutional argument raised by his own client. See Strickland v. Washington, 466 U.S. 668 (1984); United States v. Cronic, 466 U.S. 648 (1984); Wiggins v. Smith, 539 U.S. 510 (2003). Plaintiff's First and Sixth Amendment right to present a defense and to be heard on his constitutional challenge was further violated by Judge Adams cutting Plaintiff off at arraignment. See Washington v. Texas, 388 U.S. 14 (1967); Crane v. Kentucky, 476 U.S. 683 (1986); Chambers v. Mississippi, 410 U.S. 284 (1973).

## COUNT VIII

### FIRST AMENDMENT RETALIATION

*Against: Judge Murphy, Judge Adams, Judge Manning, Judge Brown, Judge Ingram, Cobb County, Fulton County*

87. Plaintiff engaged in constitutionally protected First Amendment activity by: asserting constitutional challenges to judicial authority in state court proceedings; filing pleadings and motions; initiating and maintaining this federal civil rights lawsuit; and petitioning for redress of grievances. Defendants retaliated against this protected activity through: retaliatory

bond revocation immediately following Plaintiff's constitutional challenge (Murphy); cutting Plaintiff off during his constitutional argument (Adams); holding Plaintiff in contempt for challenging the court's authority (Manning); refusing to rule on over fifty of Plaintiff's filings (Brown); and signing a retaliatory continuance order while a named federal defendant (Murphy again, May 5, 2026). See Hartman v. Moore, 547 U.S. 250 (2006); Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274 (1977); Nieves v. Bartlett, 587 U.S. 391 (2019); Hoover v. Berger, 114 F.3d 461 (4th Cir. 1997).

## COUNT IX

### SUBSTANTIVE DUE PROCESS — DEPRIVATION OF PARENTAL RIGHTS

*Against: GDHS defendants, Judge Brantley, Judge Murphy, Judge Ingram, Andrell Hall*

88. The right of a parent to the care, custody, and control of his children is a fundamental liberty interest protected by the Substantive Due Process Clause of the Fourteenth Amendment. See Troxel v. Granville, 530 U.S. 57 (2000); Meyer v. Nebraska, 262 U.S. 390 (1923); Stanley v. Illinois, 405 U.S. 645 (1972); Santosky v. Kramer, 455 U.S. 745 (1982). Defendants systematically deprived Plaintiff of his parental rights through: an ex parte child support order stripping Plaintiff of financial autonomy without notice; an ex parte protective order removing Plaintiff's physical custody of his minor children without pre-deprivation process; the sustained suppression of Plaintiff's ability to contest these orders through the courts; and the judicial impossibility created by the conflicting provisions of the protective order. These deprivations shock the conscience and constitute violations of substantive due process. See County of Sacramento v. Lewis, 523 U.S. 833 (1998).

## COUNT X

### JUDICIAL IMPOSSIBILITY — DUE PROCESS AND EQUAL PROTECTION

*Against: Judge Ingram, Judge Murphy, Cobb County*

89. The simultaneous imposition of two irreconcilable legal obligations — paragraph 13 of the protective order requiring Plaintiff to remain 500 yards from Hall, and paragraph 4 of the same order requiring both parties to appear in the same courtroom on June 2, 2026 — violates the Due Process Clause of the Fourteenth Amendment. The Due Process Clause requires that legal obligations be capable of simultaneous compliance. See Lambert v. California, 355 U.S. 225 (1957); Papachristou v. City of Jacksonville, 405 U.S. 156 (1972); United States v. Harriss, 347 U.S. 612 (1954). Defendants who knowingly or negligently created this impossibility in an order obtained through perjurious misrepresentations and signed by a conflicted judicial officer are liable for the resulting constitutional deprivation. This structural trap replicates the identical mechanism previously used to exclude Plaintiff from the child support proceedings, establishing it as a pattern rather than an accident.

## COUNT XI

### DECLARATORY RELIEF — 28 U.S.C. §§ 2201–2202

*Against: All defendants*

90. Plaintiff seeks a declaratory judgment that: (a) the January 2022 warrantless home arrest violated the Fourth Amendment; (b) the April 20, 2022 database-only arrest violated the Fourth Amendment; (c) the ninety-day detention without timely bond hearing violated the Fourth and Fourteenth Amendments; (d) the December 28, 2021 contempt citation violated the Due Process Clause; (e) the February 2024 bond revocation in response to Plaintiff's constitutional challenge violated the First and Fourteenth Amendments; (f) the October 24, 2024 child support order was entered in violation of Plaintiff's due process rights and is void; (g) the April 13, 2026 ex parte protective order was obtained through perjurious misrepresentations and is constitutionally deficient; (h) the May 5, 2026 continuance order signed by the conflicted Judge Murphy is void ab initio; (i) the systematic refusal to rule on Plaintiff's fifty-plus filings constitutes denial of access to courts; and (j) the conflicting provisions of the protective order create a judicial impossibility that violates the Due Process Clause.

## VI. STATE LAW CLAIMS — 28 U.S.C. § 1367

Plaintiff incorporates all preceding paragraphs. State law claims are brought pursuant to supplemental jurisdiction.

## COUNT XII

### FALSE ARREST — O.C.G.A. § 51-7-1

*Against: All arresting officer defendants, Fulton County, Cobb County*

91. Each of Plaintiff's arrests was made without probable cause or lawful warrant, constituting false arrest under Georgia law. The warrantless home arrest and the database-only arrest each independently constitute false arrest. See O.C.G.A. § 51-7-1; Ferrero v. Ramsey, 314 Ga. App. 369 (2012); Sherrod v. Lanier, 284 Ga. App. 140 (2007).

## COUNT XIII

### FALSE IMPRISONMENT — O.C.G.A. § 51-7-20

*Against: All defendants involved in Plaintiff's detention*

92. Each period of unlawful detention totaling in excess of four months constitutes false imprisonment under O.C.G.A. § 51-7-20. Defendants are jointly and severally liable for all damages arising from those unlawful detentions.

## COUNT XIV

### MALICIOUS PROSECUTION — O.C.G.A. § 51-7-40

*Against: Judicial officer defendants, officer defendants, Andrell Hall*

93. Defendants initiated and continued criminal and civil proceedings against Plaintiff without probable cause, with malice, and resulting in outcomes favorable to Plaintiff including charge reduction. The reduction of aggravated stalking to misdemeanor stalking constitutes a favorable termination sufficient to support malicious prosecution. The April 2026 TPO obtained through perjurious misrepresentations constitutes malicious use of civil process. See O.C.G.A. § 51-7-40; Meade v. Heimanson, 239 Ga. 177 (1977); Wal-Mart Stores, Inc. v. Johnson, 274 Ga. 479 (2001).

## COUNT XV

### ABUSE OF PROCESS — O.C.G.A. § 51-7-80 ET SEQ.

*Against: Andrell Hall, judicial officer defendants*

94. Defendants used legal process for purposes other than those for which it was designed, including the use of the Family Violence Act TPO process as an instrument of litigation harassment against a co-parent who presents no statutory family violence threat, and the cross-jurisdictional forum shopping pattern of successive TPO filings in Fulton County and Cobb County against the same respondent involving the same children and the same dispute. See O.C.G.A. § 51-7-80 et seq.; Simpson v. Countrywide Home Loans, 560 F. Supp. 2d 1323 (N.D. Ga. 2008).

## COUNT XVI

### DEFAMATION PER SE — ANDRELL HALL — O.C.G.A. § 51-5-4

*Against: Andrell Hall*

95. Defendant Hall published false statements of fact imputing to Plaintiff criminal conduct, financial irresponsibility, homelessness, and moral turpitude on a public social media platform to a large audience. These statements constitute defamation per se under O.C.G.A. § 51-5-4, entitling Plaintiff to general, special, and punitive damages without proof of special

damages. See Mathis v. Cannon, 276 Ga. 16 (2002); Stroud v. Milliken Enterprises, 258 Ga. 664 (1988); Williams v. Trust Co. of Georgia, 140 Ga. App. 49 (1976).

## COUNT XVII

### DEFAMATION PER SE — THE GEORGIA GAZETTE — O.C.G.A. § 51-5-4

*Against: The Georgia Gazette*

96. The Georgia Gazette published and maintains a booking record falsely representing Plaintiff as having been booked for Aggravated Stalking without disclosing the actual misdemeanor disposition, and published content associating Plaintiff's name with the discovery of hundreds of bodies on his property — a complete fabrication. Both publications constitute defamation per se. Plaintiff seeks compensatory damages, punitive damages, and injunctive relief ordering removal and permanent correction of the defamatory publications. See O.C.G.A. § 51-5-4; Walker v. Whittle, 83 Ga. App. 445 (1951); Atlanta Journal-Constitution v. Jewell, 251 Ga. App. 808 (2001).

## COUNT XVIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — O.C.G.A. § 51-12-6

*Against: Andrell Hall, judicial officer defendants, officer defendants*

97. The conduct of Defendants described herein — warrantless home invasion and arrest, extended pretrial detention without process, retaliatory bond revocation, sustained denial of access to courts, ex parte deprivation of parental rights, judicial impossibility trapping Plaintiff between irreconcilable legal obligations, and public defamation — constitutes extreme and outrageous conduct that was intentional or reckless and caused Plaintiff severe emotional distress. See Yarbray v. Southern Bell Tel. & Tel. Co., 261 Ga. 703 (1991); Peoples v. Guthrie, 199 Ga. App. 119 (1991).

## COUNT XIX

### CIVIL CONSPIRACY — STATE LAW — O.C.G.A. § 51-12-30

*Against: All defendants*

98. Defendants acted in combination to accomplish unlawful purposes or lawful purposes by unlawful means, causing injury to Plaintiff across every category of harm described herein. The coordinated actions of judicial officers, law enforcement, public defenders, state agency officials, court clerks, and private individuals to deprive Plaintiff of his constitutional rights, his parental relationship, and his liberty constitute a civil conspiracy under Georgia law. See

O.C.G.A. § 51-12-30; Renden, Inc. v. Liberty Real Estate Ltd. Partnership III, 213 Ga. App. 333 (1994).

## COUNT XX

### NEGLIGENCE AND FAILURE TO TRAIN AND SUPERVISE

*Against: Cobb County, Fulton County, GDHS, Cobb County Police Department, Fulton County Police Department*

99. Defendants Cobb County, Fulton County, and GDHS owed Plaintiff a duty of care in the training and supervision of their employees and agents. They breached that duty by: failing to train officers in the constitutional requirements for warrantless home arrest and database-reliant arrests; failing to train child support enforcement personnel in the due process notice requirements for establishing support obligations; and failing to supervise judicial officers and clerks despite a documented pattern of constitutional violations against Plaintiff. This failure to train amounts to deliberate indifference to the constitutional rights of citizens in a manner that caused Plaintiff's injuries. See City of Canton v. Harris, 489 U.S. 378 (1989); O.C.G.A. § 51-1-6.

## COUNT XXI

### STRUCTURAL BIAS AND DUE PROCESS VIOLATION — TITLE IV-D FINANCIAL CONFLICT OF INTEREST

*Against: State of Georgia, Georgia Department of Human Services, Candice Broce, Sarah Hurst, Christopher Hansard, Marshel Riley, Judge Brantley, Brett Conway*

100. The Due Process Clause of the Fourteenth Amendment requires that adjudication occur before a neutral and detached tribunal free from financial conflicts of interest that create a probability of bias too high to be constitutionally tolerable. See Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009); Ward v. Monroeville, 409 U.S. 57 (1972); Tumey v. Ohio, 273 U.S. 510 (1927). The adjudication of Plaintiff's child support case occurred within a system infected with exactly this type of structural financial bias.

101. Title IV-D of the Social Security Act, 42 U.S.C. § 651 et seq., and specifically 42 U.S.C. § 658a, establishes a federal-state performance incentive payment system under which the federal government provides financial incentive payments to states based on their child support enforcement performance measures — including the amount of current support collected as a percentage of current support owed. This statutory structure creates a direct, documented financial incentive for state child support enforcement agencies to maximize child support order establishment and collection, because higher collections produce higher federal incentive payments to the state.

102. Defendant State of Georgia, through its Georgia Department of Human Services (GDHS), is a registered recipient of federal formula grants under the Child Support Services program, Assistance Listing Number (ALN) 93.563, administered by the Office of Child Support Enforcement within the Administration for Children and Families of the U.S. Department of Health and Human Services. This is established by official federal records from the TAGGS (Tracking Accountability in Government Grants System) database at taggs.hhs.gov, which constitutes an official publication of the United States government, self-authenticating pursuant to Federal Rule of Evidence 902(5). Georgia DHS holds Unique Entity Identifier (UEI) P655K8RKKWG4 in the federal System for Award Management (SAM.gov).

103. The documented federal awards to Georgia DHS under ALN 93.563 during the period of Plaintiff's proceedings include: FY2026 Award No. 2602GASCSS (initial award): $22,130,168; FY2026 Award No. 2602GASCSS (supplement): $24,855,222; FY2026 Award No. 2602GASCSS (administrative supplement): $18,901,525; FY2026 Award No. 2502GASCSS: $2,722,637 — for a documented FY2026 total of $65,886,915 in federal Title IV-D incentive and formula grant funds flowing to Georgia DHS. The award classification is OPEN-ENDED, confirming the funding relationship was continuously active throughout the entire period of Plaintiff's proceedings from 2021 through the present.

104. The structural bias arises from the following documented chain: (a) Georgia DHS receives federal Title IV-D incentive payments that increase with higher child support collections; (b) Georgia DHS, through its Division of Child Support Services, directed the child support enforcement proceedings against Plaintiff; (c) Defendants Broce, Hurst, Hansard, and Riley administered and supervised those proceedings as employees and agents of Georgia DHS; (d) the financial incentive of the agency directing the proceedings ran directly toward the outcome of those proceedings — specifically, establishment of a support order and collection of support; (e) the adjudicators of Plaintiff's child support case — Defendants Brantley and Conway — operated within this financial incentive structure; and (f) the proceedings were conducted without Plaintiff's participation, ensuring no adversarial check on the financial interest in the outcome.

105. In Ward v. Monroeville, 409 U.S. 57 (1972), the Supreme Court held that a mayor who presided over traffic court — where fines constituted a significant portion of the town's revenue — created unconstitutional structural bias because of the direct financial interest in the adjudication outcome. The Title IV-D incentive structure creates an analogous and constitutionally indistinguishable relationship: the agency directing Plaintiff's child support enforcement proceedings had a direct, documented, federal-statute-created financial interest in maximizing the child support obligation established and collected against Plaintiff. The adjudicators operated within that system. Structural bias existed as a matter of constitutional law.

106. Furthermore, the conduct of Georgia DHS in pursuing and obtaining a child support order against Plaintiff through ex parte proceedings from which Plaintiff was deliberately excluded — while simultaneously receiving federal Title IV-D incentive payments for the collection activity that order generates — constitutes a misuse of federal funds in violation of the conditions of the federal grant. Federal Title IV-D grants are conditioned on state compliance with due process requirements in child support proceedings. See 42 U.S.C. § 654 (state plan requirements including procedural protections); 45 C.F.R. § 303.5 (service of process

requirements); 45 C.F.R. § 303.101 (hearings and appeals). A state that receives federal Title IV-D funds while conducting proceedings that violate the due process conditions attached to those funds is obtaining federal money through unconstitutional and fraudulent means. Plaintiff is entitled to declaratory relief establishing that the State of Georgia's receipt of Title IV-D funds in connection with proceedings that violated Plaintiff's constitutional rights constitutes an unlawful use of federal funds, and injunctive relief preventing continued enforcement of the void child support order pending constitutional proceedings.

## VII. DAMAGES

107.  As a direct and proximate result of the constitutional violations, torts, and wrongful acts of Defendants described herein, Plaintiff has suffered the following damages, which are continuing and ongoing:

**UNLAWFUL INCARCERATION AND LOSS OF LIBERTY:**

Plaintiff was unlawfully detained for a combined period exceeding four months across multiple incidents of false arrest and unlawful imprisonment, including ninety days of pretrial detention without timely bond hearing and approximately four months of retaliatory detention following Judge Murphy's bond revocation. The constitutional value of liberty lost to unlawful detention is not reducible to a per diem calculation — it encompasses the totality of deprivation, the separation from Plaintiff's minor children during critical developmental years, and the permanent record consequences of each unlawful arrest.

**LOSS OF PARENTAL RELATIONSHIP:**

Plaintiff has been systematically separated from his minor children — Arieon Raspberry and Ariella Raspberry — through a series of orders obtained without due process. The deprivation of a parent's relationship with his children during their early developmental years is an irreplaceable harm that defies precise monetization but is among the most profound injuries the law recognizes.

**FINANCIAL LOSSES:**

Plaintiff has suffered financial losses including: costs of legal proceedings; the imposition of an unlawfully obtained child support obligation; lost employment and income opportunities during periods of unlawful detention; and ongoing financial harm flowing from the defamatory publications by Hall and The Georgia Gazette that have damaged Plaintiff's reputation and professional standing.

**REPUTATIONAL HARM AND DEFAMATION DAMAGES:**

The publications by Defendant The Georgia Gazette identifying Plaintiff with an Aggravated Stalking charge that was reduced to a misdemeanor, and associating Plaintiff's name with the discovery of hundreds of bodies, have caused permanent, ongoing, searchable reputational harm. The social media defamation by Defendant Hall to a large public audience has caused additional reputational, professional, and personal harm.

**EMOTIONAL DISTRESS:**

Plaintiff has suffered severe and ongoing emotional distress as a direct result of the conduct described herein, including anxiety, trauma, and psychological harm arising from unlawful detention, forced separation from his children, the sustained obstruction of his access to the courts, the experience of being subjected to retaliatory judicial action by judges who are parties to his federal lawsuit, and the public defamation of his character.

108. Plaintiff seeks the following categories of damages against Defendants jointly and severally where applicable:

a. Compensatory damages for all actual harm suffered;

b. Special damages for quantifiable financial losses;

c. General damages for loss of liberty, loss of parental relationship, reputational harm, and pain and suffering;

d. Punitive damages against individual defendants whose conduct was malicious, oppressive, or in reckless disregard of Plaintiff's constitutional rights, including but not limited to Judge Murphy for retaliatory judicial action while a named federal defendant, Andrell Hall for perjurious misrepresentations under oath and public defamation, and The Georgia Gazette for continued publication of false and misleading booking records without correction;

e. Injunctive relief requiring: (i) The Georgia Gazette to remove or permanently correct the defamatory publications; (ii) the Cobb County Superior Court to rule on Plaintiff's pending filings in Case No. 20106519; (iii) the recusal of Judge Murphy from any further proceedings adverse to Plaintiff; and (iv) the vacatur of the May 5, 2026 void continuance order;

f. Declaratory relief as specified in Count XI;

g. Attorneys' fees and costs under 42 U.S.C. § 1988; and

h. Such other and further relief as this Court deems just and proper.

109. Plaintiff's total damages exceed $100,000,000 (One Hundred Million Dollars), the precise amount to be determined by the jury at trial. Plaintiff hereby claims all sureties on all bonds, including but not limited to the judicial bonds, official bonds, and performance bonds of every named defendant acting in any official or judicial capacity in this matter, as security for the satisfaction of any judgment entered in Plaintiff's favor. Every judge, officer, clerk,

administrator, and official named herein is required by law to maintain a bond as a condition of holding public office. Plaintiff hereby makes formal claim upon each and every such bond, in each defendant's individual and official capacity, and upon any surety company underwriting such bonds, for the full amount of damages suffered by Plaintiff as a result of each defendant's unconstitutional conduct. Notice of this surety claim is hereby served upon all defendants, all sureties, and all bonding companies of record.

## VIII. RELIEF REQUESTED

WHEREFORE, Plaintiff Ellis Meshach Raspberry™, Trustee of the Divine Creation of Raspberry Private Trust, appearing in propria persona, respectfully requests that this Court:

A. Issue a declaratory judgment as specified in Count XI declaring each of the identified acts unconstitutional and void;

B. Issue injunctive relief requiring: removal of defamatory publications by The Georgia Gazette; judicial rulings on Plaintiff's pending filings in Case No. 20106519; recusal of Judge Murphy from all proceedings adverse to Plaintiff; vacatur of the May 5, 2026 void continuance order; and resolution of the judicial impossibility in Case No. 26CV03033;

C. Award compensatory, special, general, and punitive damages as described in Section VII, in an amount exceeding $100,000,000 (One Hundred Million Dollars) to be determined by the jury, with all surety bonds of all named defendants claimed as security for judgment;

D. Award attorneys' fees and litigation costs under 42 U.S.C. § 1988;

E. Order initial disclosures and expedited discovery given the ongoing and escalating nature of the retaliatory conduct;

F. Take judicial notice of the active, documented, and continuing pattern of retaliatory conduct by named defendants occurring after the filing of this action, including Judge Murphy's May 5, 2026 order; and

G. Grant such other and further relief as law, equity, and justice may require.

## IX. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b).

Respectfully submitted this _____ day of _____, 2026,



_____

Ellis Meshach Raspberry™

Plaintiff, Pro Se

Trustee, Divine Creation of Raspberry Private Trust

Foreign Grantor Trust

In Propria Persona and Fiduciary Capacity

All Rights Reserved Without Prejudice | UCC 1-308

5042 Paces Station Drive

Atlanta, Georgia 30339

---

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of _____, 2026, a true and correct copy of the foregoing Second Amended Complaint was served upon all named defendants or their counsel of record via the Court's electronic filing system and/or U.S. Mail and/or personal service as appropriate for each defendant, and that USM-285 forms have been prepared for each named defendant for service by the United States Marshal pursuant to 28 U.S.C. § 1915.

_____

Ellis Meshach Raspberry™

Plaintiff, Pro Se



PO BOX 723252
Atlanta GA, 31139-9997
Ellis Mesnach Rasipberry

**Retail**





30303

**RDC 99**

U.S. POSTAGE PAID
FCM LG ENV
ATLANTA, GA 30339
MAY 12, 2026

**$3.00**

S2324H501986-47

Court of Clerk

75 TED TURNER DR SW

Unit 1000. Atlanta, GA, 30303

United States

**CLEARED DATE**

MAY 1 4 2026

U.S. Marshals Service
Atlanta, GA 30303